**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MIGUEL E. FIGUEROA,**<br><br>                **Petitioner,**<br><br>        v.<br><br>**JAY MERCHANT, Warden,**<br><br>                **Respondent.** | **Case No. 06 C 5919**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Miguel Figueroa's (hereinafter, "Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner asserts that the State of Illinois is confining him in violation of the United States Constitution because his publicly appointed trial and appellate counsel were ineffective, the State failed to prove his guilt beyond a reasonable doubt, and the cumulative effect of several errors rendered his trial unfair. For the following reasons, the Petition is **denied**.

### I. BACKGROUND

On August 5, 1993, during a drug deal on Chicago's West Side, Petitioner shot and killed a man named Dmitry Rabin ("Rabin"). At Petitioner's subsequent trial and re-trial, the State's witnesses related the following facts:

Rabin and his associate, Xavier Burbano ("Burbano"), were drug dealers who had arranged through their broker, Alex Ojea ("Ojea"), to purchase a large supply of marijuana from Petitioner and his associate, Eduardo Estremera ("Estremera"). The parties first met at a carwash, but the sale fell through when Estremera pointed a gun at Burbano and accused Burbano of being a cop. Later that day, the parties reconvened at a gas station and then drove to a location outside of a church, where they all exited their vehicles. Petitioner was carrying a handgun. Rabin had brought a sawed-off shotgun to the meeting, but at some point Rabin had put the shotgun in the trunk of his car. When Ojea showed Burbano some of the marijuana, Burbano balked, saying that he and Rabin wanted "something better." Rabin and Burnbano then made to leave. At that point, Petitioner and Burbano were standing on the passenger's side of Rabin's car, while Rabin and Estremera were standing on the driver's side. Petitioner then asked which person was carrying the money. When Rabin responded that he, Rabin, was carrying it, Petitioner shot Rabin from across the car. Estremera then shot Rabin five or six times with a gun of his own.

The State's witnesses also testified that Rabin had been carrying $10,500.00 in $100 dollar bills; that Petitioner pulled something from Rabin's waistband after shooting him; that Rabin's body had no cash on it when the police arrived; and that officers

later recovered $5,000.00 in $100 dollar bills from Petitioner's apartment.

Petitioner testified that he shot Rabin in self-defense. According to his testimony, right before the shooting, Estremera and Rabin had begun to argue intensely. Petitioner testified that he, Petitioner, pulled his gun when he saw Rabin reach for something in the car and start to swing around toward Petitioner. Petitioner testified that he shot at Rabin only out of fear that Rabin was trying to shoot him. According to Petitioner, he then ducked behind the car, hearing several more shots, ran to his car, and drove off after Estremera got in the passenger's side.

The jury at Petitioner's first trial convicted him of first degree murder but acquitted him of armed robbery. The Illinois Court of Appeals then reversed the murder conviction and remanded the case for a new trial. The jury at the re-trial again convicted Petitioner of first degree murder. Petitioner unsuccessfully appealed that conviction to the Illinois Court of Appeals, and the Illinois Supreme Court denied him leave to appeal. Petitioner then brought a post-conviction petition in the Circuit Court of Cook County, which summarily dismissed the petition. Petitioner appealed that decision to the Illinois Court of Appeals, at which time the Illinois State Appellate Defender withdrew its representation of Petitioner pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), because it believed an appeal would have been

frivolous. After Petitioner filed a response to the Appellate Defender's *Finley* motion, the Court of Appeals affirmed the Circuit Court's dismissal of Petitioner's post-conviction petition, and the Illinois Supreme Court denied Petitioner leave to appeal that decision.

## II. **ANALYSIS**

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") entitles a prisoner to a writ of *habeas corpus* if the state court judgment underlying imprisonment violates the United States Constitution. 28 U.S.C. § 2254; *see Williams v. Taylor*, 529 U.S. 362, 375 (2000). To this end, a *habeas* petitioner must show that the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *see Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001). Because Petitioner has invoked neither the "contrary to" test nor the "unreasonable factual determinations" test, the question before this Court is whether the various Illinois court decisions upholding Petitioner's conviction involved any unreasonable application of federal law. Specifically, Petitioner must show that "the state court's application of governing federal

law is . . . not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Petitioner claims that several aspects of the Illinois courts' decisions in his case satisfy this standard. He contends that his publicly appointed trial counsel was so ineffective as to deprive him of his Sixth Amendment rights because he failed to: (1) interview and produce two witnesses Petitioner contends would have supported his claim that the police unlawfully seized evidence used against him at trial; (2) secure records and documents to the same effect; and (3) petition the trial court to question the jury about the removed juror. Petitioner contends that his appellate counsel was likewise constitutionally ineffective by failing to: (1) investigate the removed juror, as well as that juror's effect on other jurors; (2) argue that the trial court should have questioned the jury about the removed juror; (3) raise several prosecutorial misconduct arguments; and (4) argue that the trial court erroneously admitted "other crimes" evidence, as well as several hearsay statements. Petitioner also contends that the state failed to sufficiently prove the intent element of his first-degree murder charge, and that the effect of cumulative errors in his trial rendered it unfair.

**A.  Ineffective Assistance of Trial Counsel**

Petitioner argues that his imprisonment violates his Sixth Amendment right to counsel because the public defender appointed to

represent him at trial was ineffective.  To succeed on this claim, Petitioner must show that the Illinois courts applied the standard in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), in an "objectively unreasonable" manner.  *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Under *Strickland*, Petitioner must show that:  (1) counsel's conduct fell below "an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's incompetence, the result of the trial would have been different."  *Strickland*, 466 U.S. at 688 & 694.  The first prong requires a showing that counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  *Id.* at 687.  To this end, Petitioner must overcome strong presumptions that "counsel's conduct falls within the wide range of reasonable professional assistance," and that "the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (citations omitted).  The second prong requires demonstrating a "reasonable probability" that, but for counsel's unprofessional decisions, "the result of the proceeding would have been different."  *Id*. at 694.

### *1. Use/Investigation of Evidence Purportedly Contradicting the Testimony of Detective Guevara*

Three of Petitioner's ineffective assistance arguments involve his counsel's failure to produce or investigate two witnesses and unspecified documents that Petitioner contends would have

contradicted the testimony of the officer who investigated Petitioner's case, Detective Guevara. Petitioner contends that his counsel should have elicited testimony from Petitioner's former girlfriend, Maria Torres. According to Ms. Torres' affidavit, which Petitioner submitted with his post-conviction petition, Ms. Torres would have testified that Detective Guevara entered and searched the apartment she shared with Petitioner without her consent or a search warrant. Such testimony would have bolstered Petitioner's contention that the cash recovered from his apartment was inadmissible.

Petitioner also contends that counsel should have called Ruth Peña, who works for a Chicago Police watchdog group. According to an unsigned affidavit purporting to be from Ms. Peña, which Petitioner submitted with Ms. Torres' affidavit, Ms. Peña would have testified that she "had seen complaints of police corruption . . . being carried out by Chicago Police Officer Reynaldo Guevara and others. . . ." Petitioner contends that counsel also should have sought documents from Ms. Peña's watchdog organization related to Officer Guevara.

The decision whether to call a particular witness is a matter of trial strategy reserved to the discretion of trial counsel, and such decisions merit a strong presumption that they are the result of sound trial strategy, rather than incompetence. *Strickland*, 466 U.S. at 689. It was not objectively unreasonable for the Illinois

courts to conclude that trial counsel's failure to call Ms. Torres was strategic. Detective Guevara testified that Torres consented in writing to the apartment search, and in fact the court admitted into evidence her signed consent-to-search form. Counsel thus may have elected not to call Ms. Torres because she believed Ms. Torres would have presented false testimony, which would not only have posed ethical problems for Petitioner's counsel but would have also potentially undermined the credibility of Petitioner's defense.

With regard to Ms. Peña and the watchdog group documents, Petitioner's proffered evidence amounts to hearsay statements alleging unspecified complaints against Detective Guevara. It was not unreasonable for the Illinois courts to conclude that counsel was still functioning as the "counsel" guaranteed by the Sixth Amendment, despite electing not to pursue or produce such insubstantial and inadmissible evidence.

In any case, Petitioner's argument fails *Strickland*'s prejudice prong because the consent-to-search form negates any "reasonable probability" that the outcome of the trial would have been different, since the evidence seized from Petitioner's apartment likely would have been deemed admissible whether or not Ms. Torres or Ms. Peña had testified or the watchdog group records had been entered into evidence. *See U.S. v. Matlock*, 415 U.S. 164, 171 (1974) (noting admissibility of evidence obtained through

consent of third party with common authority over defendant's premises).

## 2. *Petitioning the Trial Court to Interview All Jurors*

Petitioner argues that his trial counsel was ineffective in failing to ask the trial court to question the jury regarding a dismissed juror. After the first day of the trial, a juror named Aristotelis Benetatos ("Benetatos") privately approached the court and stated that he had previously seen Petitioner with gang members. The trial court questioned Benetatos, who affirmed that he had not communicated this information to any other juror. The trial court then excused Benetatos, instructing him not to speak with the other jurors as he left.

Petitioner's claim that it was ineffective assistance for his counsel to not ask the trial court to question the remaining jurors is meritless. As noted above, a *habeas* petitioner arguing ineffective assistance must overcome a strong presumption that a challenged action "might be considered sound trial strategy." *Id.* at 690-91. Here, trial counsel could well have reasoned that questioning the other jurors would have risked causing them to draw negative inferences regarding Benetatos' knowledge about Petitioner. Counsel may have felt that such a risk would have been unnecessary, given Benetatos' statement that he never spoke with the other jurors about Petitioner, as well as the court's admonition not to do so as he left. Moreover, these facts – the

only ones before the post-conviction court on this issue – indicate that Benetatos, in fact, did not prejudice the other jurors. Thus, Petitioner has not met his burden to show that the outcome of his case would have been different if his counsel had petitioned for questioning of the jury.

## B. Ineffective Assistance of Appellate Counsel

Petitioner raises several claims of ineffective assistance of appellate counsel. Such a claim requires a showing that counsel "fail[ed] to argue an issue that is both obvious and clearly stronger than the issues raised," *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004), and that there is a "reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised," *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) (internal quotations omitted).

### 1. Investigation/Argument Regarding Juror Benetatos

Petitioner argues that his appellate counsel was ineffective in failing to interview juror Benetatos and argue on appeal that the trial court should have questioned the jury about him. The post-conviction court was not objectively unreasonable when it rejected Petitioner's argument as "frivolous" and "based solely on mere conjecture and speculation." As discussed above, none of the record evidence suggests jury contamination, since Benetatos never spoke with other jurors about Petitioner. Moreover, it would be difficult to conclude that Petitioner's argument is not "clearly

stronger" than the arguments raised by appellate counsel, given that Illinois law gives trial judges broad discretion whether to question jurors when one has been excused, *see People v. Harris*, 526 N.E.2d 335, 343 (Ill. 1988), and such discretion is consistent with the U.S. Constitution, *see Evans v. Young*, 854 F.2d 1081, 1084 (7th Cir. 1988). Additionally, Petitioner failed to establish a reasonable probability of a different appellate outcome had appellate counsel raised the issue, since Petitioner has presented no evidence that Benetatos shared any information with other jurors.

### *2. Failure to Argue Prosecutorial Misconduct*

Petitioner claims ineffective assistance based on his appellate counsel's failure to argue that the state engaged in prosecutorial misconduct when it: elicited several purported hearsay statements, commented on an issue subject to a pending motion *in limine*, and misstated evidence. A claim of prosecutorial misconduct requires a showing that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainright*, 477 U.S. 168 (1986). Petitioner has not shown that any of the purported instances of misconduct so clearly satisfy this high burden that his counsel's failure to raise them constituted deficient performance.

Appellate counsel's failure to advance the arguments suggested by Petitioner did not constitute deficient performance because none of the purported instances of misconduct infected the fundamental fairness of Petitioner's trial, as required by *Darden*. First, as to the purported hearsay statements, each of the statements was admissible as a statement by a co-conspirator in furtherance of a conspiracy and was admitted over Petitioner's objection. There was thus nothing unfair in the state's references to them. Second, as to commenting on a pending motion *in limine*, whether doing so was improper or not, the trial court ultimately resolved the motion against Petitioner, so the state's comments could not have prejudiced Petitioner. Finally, as to the purported misstatements of evidence, the prosecutor's statements to the effect that Petitioner had stolen money from the victim did not in fact misstate the evidence. Although the state did not charge Petitioner with armed robbery, the state's case included evidence that Petitioner took and kept Rabin's money after shooting him, thus linking Petitioner to the shooting and providing evidence of his intent in shooting the Rabin. And the state's reference to Estremera telling Rabin to put his shotgun in the trunk, even if inaccurate, did not affect the trial's fairness, as no one disputed that Rabin did in fact place the shotgun in the trunk.

### 3. Failure to Raise an "Other Crimes" Argument

Petitioner claims ineffective assistance based on appellate counsel's failure to argue that the trial court erroneously admitted "other crimes" evidence related to the state's contention that Petitioner robbed Rabin. Petitioner's "other crimes" argument, however, borders on frivolous, since the evidence of Petitioner taking Rabin's money was so intertwined with the murder charge. *See, e.g.*, *U.S. v. Murray*, 474 F.3d 938, 940 (7th Cir. 2007)("other crimes" evidence is admissible as evidence of motive or intent, or if it is "part and parcel" of the crime charged). And since appellate counsel is not even required to make every *non-frivolous* argument, *see Evans*, 384 F.3d at 848, it was not objectively unreasonable for appellate counsel to not raise this issue.

Moreover, appellate counsel in effect did contest the "other crimes" evidence by arguing that the trial court should have given a limiting instruction regarding the proper purposes for which the jury could consider the robbery evidence. Especially since the appellate court rejected this argument, Petitioner cannot show a reasonable probability that a direct "other crimes" argument would have changed the outcome of his appeal.

### 4. Failure to Raise Various Evidentiary Issues

Petitioner also contends appellate counsel was ineffective in failing to argue that the trial court erroneously admitted hearsay

evidence, permitted the state to comment on the subject of a pending motion *in limine*, and allowed the state to lead a witness. The hearsay and motion-*in-limine* statements are the same ones that underlie Petitioner's prosecutorial misconduct argument above, and this Court rejects them for the same reasons as above. As for the leading questions, the post-conviction court was not unreasonable in concluding that raising the issue would not have affected the outcome of Petitioner's appeal. The record indicates that the state only asked the relevant witness three leading questions, and the court sustained Petitioner's objection to one of them.

**C. Sufficiency of Evidence and Cumulative Error**

Petitioner makes two final attacks on his conviction. He argues that the state failed to prove first degree murder, rather than second degree murder, beyond a reasonable doubt. He also makes a vague assertion that "cumulative errors require reversal of his sentence and conviction."

This Court cannot, however, reach the merits of these two claims because Petitioner procedurally defaulted them. Federal *habeas corpus* requires a prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, claims not raised at every level of a state's appellate process are considered procedurally defaulted. *Lewis v. Sternes*, 390 F.3d

1019, 1025 (7th Cir. 2004). Procedural default likewise applies to claims the state court rejected because the petitioner failed to meet some independent and adequate state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991).

Petitioner has procedurally defaulted these two claims because he failed to raise them at every appropriate level of review in the Illinois courts. *See Lewis*, 390 F.3d at 1025-26. Petitioner failed to raise his sufficiency-of-the-evidence claim on direct appeal. Consequently, the post-conviction court rejected the claim as having been waived. Such waiver is an independent and adequate procedural ground. *See Schaff v. Snyder*, 190 F.3d 513, 526 (7th Cir. 1999). Likewise, Petitioner failed to make his "cumulative error" argument in his appeal of the denial of his post-conviction petition. Procedural default thus bars this Court from reviewing the issue now.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **denied.**

**IT IS SO ORDERED.**

						_____
						Harry D. Leinenweber, Judge
						United States District Court

Dated: April 30, 2007